UNITED STATES COURT OF INTERNATIONAL TRADE
-------------------------------------------------------------------X

| | |
|---|---|
| MAPLE LEAF MARKETING, INC. : | |
| : | |
| **Plaintiff,** : | |
| : | |
| *v.* : | |
| : | |
| THE UNITED STATES, : | |
| : | |
| DONALD J. TRUMP, : | |
| President of the United States, : | |
| : | **Case No. 20-cv-00125** |
| ROBERT E. LIGHTHIZER, : | |
| U.S. Trade Representative, : | |
| : | |
| WILBUR L. ROSS : | |
| Secretary, U.S. Department of Commerce, : | |
| : | |
| **and** : | |
| : | |
| MARK A. MORGAN : | |
| Acting Commissioner, U.S. Customs and Border : | |
| Protection, : | |
| : | |
| **Defendants.** : | |

-------------------------------------------------------------------X

## COMPLAINT

Plaintiff, MAPLE LEAF MARKETING, INC., by and through its undersigned counsel, for its Complaint in this matter against Defendant, the UNITED STATES OF AMERICA, DONALD J. TRUMP, ROBERT E. LIGHTHIZER, WILBUR L. ROSS, AND MARK A. MORGAN, does hereby state, plead, and allege as follows:

## CAUSE OF ACTION

1.      This action challenges as unlawful the assessment of additional duties upon Plaintiff's imported steel products, under claimed authority of Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862 ("Section 232"). The unlawful additional Section 232

tariffs were untimely imposed on imports of steel from Canada pursuant to Presidential Proclamations issued by Defendant Trump, which were adopted and enforced by Defendant Lighthizer and Defendant Morgan. The additional Section 232 tariffs untimely imposed on imports of steel from Canada are also unconstitutional because they violate the Fifth Amendment's due process clause.

2.      This action also challenges the final agency actions of Defendant Ross, Secretary of the U.S. Department of Commerce, through its constituent, Bureau of Industry and Security ("BIS"), which denied Plaintiff's applications for exclusion from the Section 232 duties. *See* BIS Decision Documents regarding Exclusion Request Nos. 11927, and 11928 on June 7, 2020, Compl. Ex. A. BIS' denials are contrary to the interim final regulation, *see Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (March 19, 2018) ("Interim Final Rule"), and are arbitrary and capricious, and constitute an abuse of discretion, in contravention of the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

3.      This action also challenges the assessment of Section 232 duties on U.S. re-importations of goods eligible for entry under subheading 9802.00.50, HTSUS. The imposition of Section 232 duties on goods secondarily classified under subheading 9802.00.50, HTSUS, conflicts with the language of the tariff, the language of U.S. Note 3, the North American Free Trade Agreement ("NAFTA"), CBP regulations, 19 C.F.R. § 181.64, the language of the Proclamation 9705, of March 8, 2018, and Proclamation 9759 of May 31, 2018, and with the US Notes to Subchapter III of Chapter 99, HTSUS. Section 232 duties imposed on Plaintiff's re-

imported goods of subheading 9802.00.50, HTSUS, are not in accordance with the law, in contravention of the APA, 5 U.S.C. § 706(1). The additional Section 232 tariffs untimely imposed on Chapter 98 goods are also unconstitutional because they violate the Fifth Amendment's due process clause.

4.      This action also challenges a report of the Secretary of the U.S. Department of Commerce under Section 232, which was received by the President on January 11, 2018 (the "Commerce Report"), which is in excess of statutory jurisdiction, authority or limitations under Section 232 insofar as it failed to abide by mandatory requirements of Section 232, namely the requirement of publication in the Federal Register, *see* 19 U.S.C. § 1862(b)(3)(B), and therefore is not in accordance with law, in violation of the APA.

5.      This action also seeks a declaratory judgment that Section 232 is unconstitutional as an improper delegation of legislative power to the President, in violation of Article I, Section 1 of the Constitution and the doctrine of separation of powers and the system of checks and balances the Constitution protects.

## **JURISDICTION**

6.      Plaintiffs' cause of action arises under Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862, a law of the U.S. "providing for … tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," as well as for "administration and enforcement with respect to" such tariffs, duties and fees, *see* 19 U.S.C. §§ 1581(i)(2) and (4), under which tariffs have been untimely and unlawfully imposed. This Court has jurisdiction over this action under 28 U.S.C. § 1581(i)(2) and (4).

7.      Plaintiff's cause of action also arises under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*., and is cognizable under 28 U.S.C. § 1581(i)(2) and (4), to the extent it challenges:

       a.   the untimely imposition of Section 232 duties on imports of steel from Canada in contravention of the statutory limitations imposed by Section 232, 19 U.S.C. 1862(c).

       b.   BIS Decision Documents denying Plaintiff's applications for exclusion from Section 232 tariffs as arbitrary and capricious, and an abuse of discretion;

       c.   the assessment of Section 232 duties on steel imports which are classifiable under subheading 9802.00.50, HTSUS, as arbitrary and capricious, an abuse of discretion, and not in accordance with the law;

       d.   the Commerce Report, which is in excess of statutory jurisdiction, authority or limitations under Section 232 insofar as it fails to abide by mandatory requirements of Section 232, namely the requirements of publication in the Federal Register, *see* 19 U.S.C. § 1862(b)(3)(B), and therefore is not in accordance with law;

8.      Plaintiff's cause of action also challenges as unconstitutional the untimely imposition of Section 232 duties on imports of steel from Canada under 19 U.S.C. § 1862(c), as well as the untimely and unlawful imposition of Section 232 duties on goods of Chapter 98, thereby depriving Plaintiff of property without due process of law.

9.      Plaintiff's cause of action also challenges as unconstitutional the delegation of authority from Congress to the Executive Branch in Section 232 which lacks an intelligible

principle by which the Executive is to Act, violating the delegation doctrine. The additional Section 232 duties imposed and collected on Plaintiff's imports of steel are an unlawful exercise of legislative authority and are void *ab initio*.

10.     Plaintiff's claims are not cognizable under any other subsection of 28 U.S.C. § 1581.

## **PARTIES**

11.     Plaintiff Maple Leaf Marketing, Inc. ("MLM") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at 401 West Texas Ave., Suite 917, Midland, Texas 79701. MLM is the exclusive importer of EndurAlloy™ boronized J-55 steel tubing, which is used by the oil and gas industry. MLM is the real party in interest in this action.

12.     Defendant the United States of America is the federal Defendant to which Plaintiff paid the additional 25% Section 232 tariffs on its steel imports and is the statutory defendant under 28 U.S.C. § 1581(i)(2) and (4).

13.     Defendant, Donald J. Trump, is the President of the United States who, after receiving recommendations from the U.S. Department of Commerce, purported to impose tariffs and other import restrictions on imported steel products that are the basis of this action.

14.     Defendant, Wilbur L. Ross, is the Secretary of the U.S. Department of Commerce (the "Department" or "Commerce"), who directly supervised the Commerce Report at issue in this case which recommended the imposition of tariffs and other import restrictions on imported steel products, and who directly oversees the Department and BIS' Section 232 exclusion process.

15.     Defendant, Robert E. Lighthizer, is the U.S. Trade Representative, who is responsible for *inter alia* publishing Subchapter III of Chapter 99, HTSUS.

16.     Defendant, Mark A. Morgan, is the Acting Commissioner of U.S. Customs and Border Protection ("Customs" or "CBP"), which is charged with assessment and collection of Customs duties and fees and which administers and enforces the trade restrictions challenged in this action.

## STANDING

17.     Plaintiff has standing to bring this action pursuant to 28 U.S.C. § 2631(i), which states that "[a]ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a) – (h), may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5."

18.     Plaintiff's action arises under Section 232, 19 U.S.C. § 1862, as the Defendants have acted beyond statutory authority, the Constitution of the United States, and Section 702 of the APA, 5 U.S.C. § 702. Section 702 states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." In an action under Section 702, "the reviewing court shall … (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law … [and] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right … " 5 U.S.C. §§ 706(2)(A), (C).

19.     Plaintiff has suffered injury in fact by reason of Defendants' unlawful actions, and has standing to bring this action as a "person" adversely affected or aggrieved by agency action—in this instance the imposition of additional Section 232 tariffs on Plaintiff's steel imports, the denial of applications for exclusion therefrom, and the assessment of additional tariffs on re-imported goods eligible for classification under subheading 9802.00.50, HTSUS—within the

meaning of 5 U.S.C. § 702. Plaintiff is in the zone of interests to be protected or regulated by the statute or constitutional guarantees in question, and it is suffering injury caused by the unlawful imposition of Section 232 tariffs on its imported steel products.

## TIMELINESS

20.     An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

21.     Plaintiff has commenced this action by concurrently filing a summons and complaint within two years after the cause of action first accrued. The claims asserted by Plaintiff first accrued at the earliest on June 25, 2018—*i.e.,* the date of Plaintiff's first importation of steel products assessed with additional Section 232 duties of 25%. This action is therefore timely filed under 28 U.S.C. § 2636(i).

## STATEMENT OF FACTS

### SECTION 232 PROCESS

22.     Within 270 days of initiating an investigation under Section 232, the Secretary of Commerce is required to submit a report to the President of his/her findings on whether a particular article of commerce is being imported into the U.S. in such quantities or under such circumstances as to threaten to impair the national security. 19 U.S.C. § 1862(b)(3)(A).

23.     The term "national security" is not defined in the statute.

24.     Section 232 requires that "[a]ny portion of the report submitted by the Secretary under subparagraph (A) which does not contain classified information or proprietary information shall be published in the Federal Register." 19 U.S.C. § 1862(b)(3)(B).

25.     Under Section 232(c), the President has 90 days after receiving the Secretary's Report, to determine whether to concur with the findings of the Secretary. If the President

determines to take actions under Section 232, the President must "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article," 19 U.S.C. § 1862(c)(1)(A)(ii), within 90 days after receipt of the Secretary of Commerce's report and recommendations. Thereafter, the President "shall implement that action by no later than the date that is 15 days after the day on which the President determines to take action." *Id.* § 1862(c)(1)(B). Accordingly, any actions to adjust imports must be imposed no later than 105 days after receiving the Secretary's report.

26.     The statute only authorizes the President to take actions that seek to "<u>adjust the imports</u> of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii) (emphasis added); *see also*, *id.* § 1862(c)(1)(B) (" … take action to <u>adjust imports</u> … ") (emphasis added); *id.* § 1862(c)(3)(ii) ("the President shall take such other actions as the President deems necessary to <u>adjust the imports</u> of such article so that such imports will not threaten to impair the national security.") (emphasis added).

27.     If the President determines that "the action taken" is "the negotiation of an agreement" to limit imports into the U.S., and no agreement is made within 180 days after the date on which the determination to negotiate is made, "the President shall take such other actions as the President deems necessary to adjust the imports" of the article. *Id.* at § 1862(c)(3)(ii).

28.     If the President determines that "the action taken" is "the negotiation of an agreement" to limit imports into the U.S., the President may not take any action to "adjust imports" until at least 180 days have elapsed from the date on which the determination to commence negotiations is made. *Id.* at § 1862(c)(3)(ii).

**SECTION 232 STEEL INVESTIGATION**

29.     On April 20, 2017, the Secretary initiated an investigation under Section 232 regarding certain steel imports at the direction of Defendant Trump. The investigation was announced in a notice published in the Federal Register. *See* 82 Fed. Reg.19205 (April 26, 2017).

30.     The Commerce Report relating to the steel investigation was received by the President on January 11, 2018. *See* Proclamation 9705 of March 8, 2018.

31.     The Commerce Report was not published in the Federal Register as required by 19 U.S.C. § 1862(b)(3)(B).

32.     The Report provides the sole authority for the President to take actions to "adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii) (emphasis added).

**PRESIDENTIAL PROCLAMATIONS INVOLVING STEEL**

33.     On March 8, 2018, President Donald J. Trump imposed 25% *ad valorem* duties on imports of certain steel products into the U.S. from all countries except Canada and Mexico, under claimed authority of Section 232, with an effective date of March 23, 2018. *See* Proclamation 9705 of March 8, 2018, *Adjusting Imports of Steel Into the United States,* 83 Fed. Reg. 11,625 (March 15, 2018) ("Proclamation 9705").

34.     Proclamation 9705 notes the existence of "special circumstances with respect to Canada and Mexico," *id.* at ¶ 8, and stating further that:

> I have determined that the necessary and appropriate means to address the threat to the national security posed by imports of steel articles from Canada and Mexico is to continue ongoing discussions with these countries and to exempt steel articles imports from these countries from the tariff, at least at this time. I expect that Canada and Mexico will take action to prevent transshipment of steel articles through Canada and Mexico to the United States.

*Id.* ¶ 10 (emphasis added). This language exempting steel articles imports from Canada serves to

commence the 180-day negotiation period mandated by 19 U.S.C. § 1862(3)(A), which provides:

> (A) If—
>
>> (i) the action taken by the President under paragraph (1) is the <u>negotiation of an
>> agreement</u> which limits or restricts the importation into, or the exportation to,
>> the United States of the article that threatens to impair national security, and
>>
>> (ii) either—
>>
>>> (I) <u>no such agreement is entered into before the date that is 180 days after
>>> the date on which the President makes the determination under paragraph
>>> (1)(A) to take such action</u>, or
>>>
>>> (II) such an agreement that has been entered into is not being carried out or
>>> is ineffective in eliminating the threat to the national security posed by
>>> imports of such article,
>>
>> <u>the President shall take such other actions as the President deems necessary to
>> adjust the imports</u> of such article so that such imports will not threaten to impair
>> the national security. The President shall publish in the Federal Register notice
>> of any additional actions being taken under this section by reason of this
>> subparagraph.

(Emphasis added). Defendant Trump exempted imports of steel from Canada while continuing

"ongoing discussions" (*i.e.,* to negotiate an agreement pursuant to 19 U.S.C. § 1862(3)(A)), and

therefore, no actions "to adjust imports" could be taken against Canada or Mexico before

September 4, 2018.

      35.     In the Annex to Proclamation 9705, the President identified the steel products

subject to the additional duty by description and by Harmonized Tariff Schedule of the United

States ("HTSUS") heading and subheading numbers, providing:

> The rates of duty set forth in heading 9903.80.01 apply to all imported products of
> iron or steel classifiable in the provisions enumerated in this subdivision:
>
>> (i) flat-rolled products provided for in headings 7208, 7209, 7210, 7211,
>> 7212, 7225 or 7226;

(ii) bars and rods provided for in headings 7213, 7214, 7215, 7227, or 7228, angles, shapes and sections of 7216 (except subheadings 7216.61.00, 7216.69.00 or 7216.91.00); wire provided for in headings 7217 or 7229; sheet piling provided for in subheading 7301.1 0.00; rails provided for in subheading 7302.1 0; fish-plates and sole plates provided for in subheading 7302.40.00; and other products of iron or steel provided for in subheading 7302.90.00;

(iii) <u>tubes, pipes and hollow profiles provided for in heading 7304, or 7306; tubes and pipes provided for in heading 7305</u>.

(iv) ingots, other primary forms and semi-finished products provided for in heading 7206, 7207 or 7224; and

(v) products of stainless steel provided for in heading 7218, 7219,7220, 7221, 7222 or 7223.

*See* Proclamation 9705, *Annex To Modify Chapter 99 of the* [*HTSUS*], Note 16(b) (emphasis added). Neither Proclamation 9705, nor the Annex thereto, identifies re-imported goods classifiable under subheading 9802.00.50, HTSUS, as being subject to additional Section 232 duties.

36.     On March 22, 2018, Defendant Trump issued Proclamation 9711, which modified Proclamation 9705 and continued exempting "at this time" imports of steel articles from, *inter alia,* Canada from any import adjustment measures, pending negotiations pursuant to 19 U.S.C. § 1862(3)(A) "on satisfactory alternative means to address the threatened impairment to the national security by imports of steel articles from those countries." *See* Proclamation 9711 of March 22, 2018, *Adjusting Imports of Steel Into the United States,* 83 Fed. Reg. 13,361 (March 28, 2018) ("Proclamation 9711").

37.     On April 30, 2018, Defendant Trump issued Proclamation 9740, which, *inter alia*, modified the previous Proclamations to *inter alia* continue the exemption for imports of steel from Canada pending negotiations pursuant to 19 U.S.C. § 1862(3)(A). *See* Proclamation 9740 of April

30, 2018, *Adjusting Imports of Steel Into the United States,* 83 Fed. Reg. 20,683 (May 7, 2018) ("Proclamation 9740").

38.     On May 31, 2018, less than "180 days after the date on which the President ma[de] the determination" to negotiate an "agreement which limits or restricts the importation into, or the exportation to, the United States of the article that threatens to impair national security," 19 U.S.C. § 1862(3)(A), Defendant Trump purported to impose 25% tariffs on steel articles imported into the U.S. from Canada in Proclamation 9759. *See* Proclamation 9759 of May 31, 2018, *Adjusting Imports of Steel Into the United States,* 83 Fed. Reg. 25,857 (June 5, 2018) ("Proclamation 9759").

39.     Proclamation 9759 was issued more than 90 days after Defendant Trump received the Commerce Report on January 11, 2018, 19 U.S.C. § 1862(c)(1)(A), and more than 15 days after Defendant Trump determined to take action to adjust imports on March 8, 2018. *Id.* § 1862(c)(B).

40.     Defendant Trump issued Proclamation 9759, which, *inter alia*, modified the previous Steel Proclamations to *inter alia* impose 25% tariffs on imports of steel articles from Canada, effective for goods imported on and after June 1, 2018.

41.     On May 19, 2019, Defendant Trump issued Proclamation 9894, which terminated the tariffs on steel imports from Canada and Mexico, effective May 23, 2019, and which provided:

> … imports of steel articles from Canada and Mexico will <u>no longer threaten to impair the national security</u>, and thus I have decided to exclude Canada and Mexico from the tariff proclaimed in Proclamation 9705, as amended.

*See* Proclamation 9894, 84 Fed. Reg. 12,988 (May 23, 2019) ("Proclamation 9894").

42.     The President based authority to issue the Section 232 Steel Proclamations on the authority of Section 232 and the Commerce Report. No other legal authority exists, or was claimed, for these Steel Proclamations.

**SECTION 232 EXCLUSION PROCESS**

43.     According to Proclamation 9705 of March 8, 2018, the Secretary of Commerce

recommended to the President that he be permitted "in response to specific requests from affected

domestic parties, to exclude from any adopted import restrictions those steel articles for which the

Secretary determines there is a <u>lack of sufficient U.S. production capacity of comparable products,</u>

<u>or to exclude steel articles from such restrictions</u> … " *Id.* ¶ 4 (emphasis added).

44.     In Proclamation 9705, the President ordered that:

> The Secretary, in consultation with the Secretary of State, the Secretary of the
> Treasury, the Secretary of Defense, the United States Trade Representative
> (USTR), the Assistant to the President for National Security Affairs, the Assistant
> to the President for Economic Policy, and such other senior Executive Branch
> officials as the Secretary deems appropriate, is hereby authorized to<u> provide relief</u>
> from the additional duties set forth in clause 2 of this proclamation<u> for any steel</u>
> <u>article determined not to be produced in the United States in a sufficient and</u>
> <u>reasonably available amount or of a satisfactory quality and is also authorized to</u>
> <u>provide such relief based upon specific national security considerations.</u> Such relief
> shall be provided for a steel article only after a request for exclusion is made by a
> directly affected party located in the United States. If the Secretary determines that
> a particular steel article should be excluded, the Secretary shall, upon publishing a
> notice of such determination in the Federal Register, notify Customs and Border
> Protection (CBP) of the Department of Homeland Security concerning such article
> so that it will be excluded from the duties described in clause 2 of this proclamation.
> The Secretary shall consult with CBP to determine whether the HTSUS provisions
> created by the Annex to this proclamation should be modified in order to ensure the
> proper administration of such exclusion, and, if so, shall make such modification to
> the HTSUS through a notice in the Federal Register.

Proclamation 9705, ¶ 3 (emphasis added).

45.     The Department then published an interim final rule establishing a process for

affected domestic parties to submit requests for exclusions. *See Requirements for Submissions*

*Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting*

*Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States;*

*and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed.

Reg. 12,106 (March 19, 2018) ("Interim Final Rule").

46.     The Department has explained that the purpose of the exclusion process is:

> [T]o protect downstream manufacturers that rely on products not produced by U.S. domestic industry at this time. The guiding principle is that, <u>if U.S. domestic industry does not or will not produce a given steel or aluminum product of the quality needed by users in the United States, companies that rely on those products will not pay duties on them.</u>

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*,

83 Fed. Reg. 46,026, 46,038–39 (Sept. 11, 2018) (emphasis added).

## MAPLE LEAF MARKETING, INC. IMPORT ENTRIES

47.     Plaintiff MLM is the exclusive U.S. importer and distributor of a specially hardened and boronized J-55 steel tubing product known as EndurAlloy™, which is used in the U.S. oil and gas industry.

48.     EndurAlloy™ is the end-product of a specialized chemical deposition alteration treatment performed exclusively by Endurance Technologies Inc. ("ETI"), in Alberta, Canada. ETI sources Range 2 (28' – 32') API 5CT J-55 steel tubing from U.S. vendors who export the steel to Canada where ETI performs its proprietary EndurAlloy™ chemical deposition alteration treatment of ERW and seamless tubing, which results in a steel tubing product with significantly improved hardness and technical advantages.

49.     The EndurAlloy™ process provides exceptional protection against rotating or stroking rod wear, erosion caused by abrasive fluids, corrosion, and other factors that cause premature tubing failures in challenging drilling environments. Other advantages include reduced tubing failures, workover, well servicing, and maintenance costs to the oil well operator. Compared with standard J-55 tubing, EndurAlloy™ tubing increases the run time of standard J-55 tubes in

severely corrosive environments; increases the pumpability due to reduced coefficient of friction; increases material compatibility; and resultantly, provides an increased revenue stream to the oil well operator.

50.     The availability of EndurAlloy™ J-55 ERW or seamless tubing in the U.S. market cannot be determined by analyzing the availability of standard J-55 ERW or seamless tubing. As compared to standard J-55 tubing, EndurAlloy™ tubing has greater hardness, corrosion resistance, and environmental protection by virtue of a microns-thin layer of boron that is vacuum-deposited into the inner diameter of the J-55 tubing by virtue of ETI's Canadian processing. EndurAlloy™ lasts up to four times longer than, and costs roughly four times as much as, standard J-55 ERW or seamless tubing.

51.     The imported EndurAlloy™ steel tubing was primarily classified upon entry under subheadings of 7304 and 7306, HTSUS, which are regularly duty free.

52.     Section 232 duties of 25-percent *ad valorem* were imposed on steel goods of subheadings 7304, HTSUS, and 7306, HTSUS, imported from Canada between June 1, 2018 and May 19, 2019. *See,* Proclamation 9705, 83 Fed. Reg. 11,625 (March 15, 2018); Proclamation 9759, 83 Fed. Reg. 25,857 (June 5, 2018); Proclamation 9894, 84 Fed. Reg. 12,988 (May 23, 2019).

53.     Plaintiff asserted the imported steel qualifies for treatment under subheading 9802.00.50, HTSUS, as goods subject to repair and alteration treatments abroad.

54.     Goods secondarily classified under subheading 9802.0050, HTSUS, when returned to the U.S., are ordinarily subject to "a duty upon the value of the repairs or alterations (*see* U.S. Note 3 of this subchapter)." *See* Subheading 9802.00.50, HTSUS. U.S. Note 3 provides (emphasis added):

3. Articles repaired, altered, processed or otherwise changed in condition abroad.--
The following provisions apply only to subheadings 9802.00.40 through
9802.00.60, inclusive:

> (a) The <u>value of repairs, alterations, processing or other change in condition</u>
> <u>outside the United States shall be</u>:

>> (i) The <u>cost to the importer of such change</u>; or

>> (ii) If no charge is made, the value of such change,

> <u>as set out in the invoice and entry papers</u>; except that, if the appraiser
> concludes that the amount so set out does not represent a reasonable cost or
> value, then the value of the change shall be determined in accordance with
> section 402 of the Tariff Act of 1930, as amended.

\*          \*          \*

> (d) For the purposes of subheadings 9802.00.40 and 9802.00.50, the rates
> of duty in the "Special" subcolumn of column 1 followed by the symbol
> "CA" or "MX" in parentheses <u>shall apply to any goods which are returned</u>
> <u>to the United States after having been repaired or altered in Canada or in</u>
> <u>Mexico, respectively, whether or not such goods are goods of Canada or</u>
> <u>goods of Mexico under the terms of general note 12 to the tariff schedule</u>.

\*          \*          \*

55.     The regulatory criteria that must be satisfied to qualify for repair and alteration

treatment, when goods are sent to a NAFTA country, are set out in Section 181.64 of the CBP

Regulations, which provides, in relevant part:

> a) General. This section sets forth the rules which apply for purposes of obtaining
> duty-free or reduced-duty treatment on goods returned after repair or alteration
> in Canada or Mexico as provided for in subheadings 9802.00.40 and
> 9802.00.50, HTSUS. Goods returned after having been repaired or altered in
> Mexico, whether or not pursuant to a warranty, and goods returned after having
> been repaired or altered in Canada pursuant to a warranty, are eligible for duty-
> free treatment, provided that the requirements of this section are met. Goods
> returned after having been repaired or altered in Canada other than pursuant to
> a warranty are subject to duty upon the value of the repairs or alterations using
> the applicable duty rate under the United States-Canada Free-Trade Agreement
> (*see* § 10.301 of this chapter), provided that the requirements of this section are
> met. For purposes of this section, "repairs or alterations" means restoration,
> addition, renovation, redyeing, cleaning, resterilizing, or other treatment which

does not destroy the essential characteristics of, or create a new or commercially different good from, the good exported from the United States.

\*          \*          \*

b) Goods not eligible for duty-free or reduced-duty treatment after repair or alteration. The duty-free or reduced-duty treatment referred to in paragraph (a) of this section shall not apply to goods which, in their condition as exported from the United States to Canada or Mexico, are incomplete for their intended use and for which the processing operation performed in Canada or Mexico constitutes an operation that is performed as a matter of course in the preparation or manufacture of finished goods.

56.     Accordingly, for an article to be considered "repaired or altered" under subheading 9802.00.50, HTSUS, and the corresponding regulation, 19 C.F.R. § 181.64, the following elements must be satisfied:

(i)     The article must be a finished good, complete for its intended use before exportation from the United States.

(ii)     While abroad, the article may be subject to "any process of manufacture or other means" including restoration, addition, renovation, redyeing, cleaning, resterilizing, or other treatments.

(iii)     The operations performed abroad must not destroy the essential characteristics of, or create a new or commercially different good from, the good exported from the United States.

57.     The EndurAlloy™ steel tubing products exported to Canada for processing by ETI were finished goods at the time of their exportation from the U.S.—*i.e.,* J-55 steel tubing—and were complete for their intended use—*i.e.,* as oil country tubular goods ("OCTG").

58.     While in Canada, the U.S.-exported J-55 steel tubing underwent permissible alterations (*i.e.,* "any process of manufacture or other means," *see* subheading 9802.00.50, HTSUS), that did not destroy the essential characteristics of, or create a new or commercially different good from, the re-imported EndurAlloy™ J-55 steel tubing re-imported into the U.S.. The re-imported EndurAlloy™ tubing remains identifiable as the same J-55 steel tubing that was previously exported; it retains all essential characteristics that make it susceptible for use as OCTG.

The Canadian processing by ETI of the steel tubing into EndurAlloy™ merely advanced the value and improved the condition of the tubing, making it specially hardened and improved for use in highly corrosive conditions.

59. Section 232 duties may only be imposed on steel articles that are classified in a tariff provision listed in the Annex to Proclamation 9705, and in accordance with Chapter 99, Note 16(b). Defendant, Lighthizer, the U.S. Trade Representative, is responsible for publishing and modifying Subchapter III of Chapter 99, HTSUS.

60. HTSUS 2018 Revision 2 was published on or around March 29, 2018 ("2018 HTSUS Rev. 2"), without any mention in Subchapter III of Chapter 99 that Section 232 duties will apply to goods classifiable under chapter 98. HTSUS 2018 Revision 3 was published on or around April 26, 2018 ("2018 HTSUS Rev. 3"), without any mention in Subchapter III of Chapter 99 that Section 232 duties will apply to goods classifiable under chapter 98. HTSUS 2018 Revision 4 was published on or around May 1, 2018 ("2018 HTSUS Rev. 4"), and for the first time mentions in Subchapter III of Chapter 99 goods classifiable under Chapter 98, providing in relevant part:

> Goods for which entry is claimed under a provision of chapter 98 and which are subject to the additional duties prescribed herein shall be eligible for and subject to the terms of such provision and applicable U.S. Customs and Border Protection ("CBP") regulations, except that duties under subheading 9802.00.60 shall be assessed based upon the full value of the imported article.

U.S. Note 16(a)(i), Subchapter III, Chapter 99, HTSUS.

61. The May 1, 2018 modification of the HTSUS in 2018 HTSUS Rev. 4, which included additional U.S. Note 16(a)(i) to Subchapter III, Chapter 99, HTSUS, was published more than 90 days after the President's January 11, 2018 receipt of the Commerce Report, 19 U.S.C. § 1862(c)(1)(A)(ii), and more than 15 days after the March 8, 2018 implementation of Section 232 actions. *Id.* § 1862(c)(1)(B).

62.     CBP acts in a ministerial capacity to assess and collect additional duties of 25% on certain steel articles pursuant to Proclamation 9705 and Subchapter III of Chapter 99, HTSUS.

63.     On April 13, 2020, in Cargo Systems Messaging Service ("CSMS") No. 42355735 ("CSMS No. 42355735"), CBP claimed to issue guidance on products being imported under provisions of Chapter 98, HTSUS, that also fall under the scope of Section 232. According to CBP, Section 232 duties will be assessed independently of any Chapter 98 claim. Where a Chapter 98 provision assesses duty on a portion of the article—such as the cost or value of the repairs or alterations performed abroad, *see* subheading 9802.00.50, HTSUS—CBP asserts that the Section 232 duties will be assessed on the cost or value of the repairs or alterations.

## MAPLE LEAF MARKETING EXCLUSION REQUESTS

64.     Plaintiff filed five (5) exclusion requests with BIS pursuant to the Interim Final Rule. *See*, Request ID Nos. 11928, 11927, 11926, 11924, 11918. These applications were posted on the Section 232 docket on August 14, 2019.

65.     On September 25, 2019, Maverick Pipe and Tube filed five (5) objections against each of Plaintiff's applications. Maverick Pipe and Tube misrepresented (inappositely) that "Maverick has capability to manufacture and supply Welded OCTG as a substitute product," and that "Maverick manufactures OCTG to the dimensional, chemical, and mechanical specifications cited in the Exclusion Request." Maverick does not manufacture OCTG to the dimensional, chemical, and mechanical specifications of EndurAlloy™ cited in the MLM's exclusion requests.

66.     Maverick misrepresented that it manufactures OCTG with metallurgical qualities *identical* to EndurAlloy™, including boron between 0.097%-0.102%., and with thicknesses, inside and outside diameters, and lengths *identical* to EndurAlloy™. Maverick also incorrectly asserted that "the requested product [*i.e.,* EndurAlloy™] is a low end or standard product that can be

manufactured by Maverick and other producers in the U.S." EndurAlloy™ costs up to four time

more, and lasts up to four times longer, than untreated OCTG.

67.     Plaintiff filed timely rebuttals to each of Maverick's objections, asserting *inter alia*

that "Maverick either fails to understand the nature of EndurAlloy™ or has knowingly made

materially false statements to BIS in its objection filing. *See e.g.*, 18 U.S.C. § 1001(a)(2)." MLM

also reiterated that EndurAlloy™ is produced through an advanced surface engineering thermo-

chemical (thermal-diffusion) process based on chemical vapor deposition ("CVD") principles that

result in a unique product otherwise unavailable in the U.S., and certainly not produced by

Maverick. MLM's objections also explained that its Canadian vendor, ETI, is the only known

producer in the world capable of boronizing the inner diameter of 28 to 32 foot lengths of J-55

steel tubing in commercial quantities. MLM provided detailed information supporting its

assertions that (i) Maverick's coated OCTG tubing is not similar to EndurAlloy™; (ii) Maverick

does not currently offer for sale any product similar to EndurAlloy™; and (iii) Maverick could not

produce product similar to EndurAlloy™ without significant research and development and

investment in new facilities. MLM further submitted that "to substantiate its objection, Maverick

should be required to submit to BIS evidence of its production of a product having the

characteristics and properties of EndurAlloy™."

68.     Maverick declined to respond to MLM's request and never filed a surrebuttal or

any other information with the Department.

69.     BIS issued BIS Decision Documents regarding Exclusion Request Nos. 11918,

11924, and 11926 on June 4, 2020, Compl. Ex. B, determining to grant MLM's exclusion requests

for seamless EndurAlloy™ tubing, stating that "the product referenced in the above-captioned

exclusion request is not produced in the U.S. in a sufficient and reasonably available amount or of

a satisfactory quality, and recommends granting the request for an exclusion." The granted exclusions relate to seamless EndurAlloy™ tubing products of subheading 7304, HTSUS.

70.     BIS issued BIS Decision Documents regarding Exclusion Request Nos. 11927, and 11928 on June 7, 2020, Compl. Ex. A, determining to deny MLM's exclusion requests for ERW EndurAlloy™ tubing, stating that "the product referenced in the above-captioned exclusion request is produced in the U.S. in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for an exclusion." The denied exclusions relate to ERW EndurAlloy™ tubing products of subheading 7306, HTSUS.

## **COUNT I**

71.     Paragraphs 1 through 70 of this Complaint are restated and incorporated by reference as though fully set forth herein.

72.     Where the President determines that the "action taken" under 19 U.S.C. § 1862(c)(3)(ii) is "the negotiation of an agreement" to limit imports into the U.S., Section 232 expressly prohibits the President from taking action to "adjust imports" at any point before the 180-day period required by the statute has elapsed. 19 U.S.C. § 1862(c)(3)(ii).

73.     If the President determines that "the action taken" is "the negotiation of an agreement" to limit imports into the U.S., the President may not take action to "adjust imports" before 180 days after the date on which the determination to negotiate is made. *Id.* at § 1862(c)(3)(ii).

74.     Proclamation 9759, which imposed Section 232 duties on steel imports from Canada, must be set aside to the extent it fails to comply with the requirements of Section 232. 5 U.S.C. §§ 701-706.

75.     Proclamation 9759 is contrary to law and unauthorized by Section 232 for failure to comply with mandatory conditions in the statute. Specifically, tariffs on Canada were proclaimed later than 105 days after the President's January 11, 2018 receipt of the Secretary's report (*i.e.,* by April 26, 2018), contrary to the requirements of Section 232. 19 U.S.C. § 1862(c)(1).

76.     To the extent the President may have elected to pursue negotiations with Canada pursuant to 19 U.S.C. § 1862(c)(3), the duties were imposed on steel imports from Canada prior to expiration of the 180-day period provided in the statute, and were ultra vires as in excess of the President's statutorily delegated authority. 19 U.S.C. § 1862(c)(3)(ii).

77.     To the extent the President did not elect to pursue negotiations with Canada pursuant to 19 U.S.C. § 1862(c)(3), the duties were imposed on steel imports from Canada after the 90-day period provided in the statute, *id.* § 1862(c)(1)(A), and after the 15-day period after the day on which the President determined to take action (*i.e.,* March 8, 2018), *id.* § 1862(c)(B), and were ultra vires as in excess of the President's statutorily delegated authority.

## COUNT II

78.     Paragraphs 1 through 77 of this Complaint are restated and incorporated by reference as though fully set forth herein.

79.     On information and belief, the conduct and practice of the U.S. Department of Commerce, through BIS, when presented with Section 232 factual information in an exclusion application, and disputed in an objection, rebuttal, and/or surrebuttal process, is inconsistent with the law, 18 U.S.C. § 1862, the Presidential Proclamations involving Section 232, and with the standards articulated in the Interim Final Rule, 83 Fed. Reg. 12,106 (March 19, 2018).

80.    BIS Decision Documents regarding ERW tubing (exclusion requests denied) and seamless tubing (exclusion requests granted) are irreconcilable. BIS Decision Documents involving EndurAlloy™ ERW tubing, *see* Exclusion Request Nos. 11927, and 11928 of June 7, 2020, Compl. Ex. A, incorrectly and unlawfully determined that "the product referenced in the above-captioned exclusion request is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for an exclusion." These denial determinations are arbitrary and capricious, constitute an abuse of discretion, and are not in accordance with the law, in contravention of the APA, 5 U.S.C. § 706(1).

81.    Meanwhile, BIS Decision Documents involving EndurAlloy™ seamless tubing, *see* Exclusion Request Nos. 11918, 11924, 11926, Compl. Ex. B, correctly determined that "the product referenced in the above-captioned exclusion request is not produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, and recommends granting the request for an exclusion." BIS' unavailability determination clearly addresses the unavailability of *boronized* J-55 seamless tubing (*i.e.,* EndurAlloy™ seamless tubing) because standard J-55 seamless tubing (*i.e.,* non-boronized seamless tubing) is available from several U.S. producers. Therefore, the unavailability determination relates to the super-hardened seamless tubing product known as EndurAlloy™. It was arbitrary and capricious and an abuse of discretion for BIS to deny the ERW tubing applications based on the availability of standard J-55 ERW tubing (*i.e.,* non-boronized ERW tubing) when it granted the seamless tubing applications based on the unavailability of the super-hardened seamless EndurAlloy™ product.

82.    Moreover, at all times after May 19, 2019, the President agreed that imports of steel from Canada do not present a national security threat to the U.S. Effective May 19, 2019, the President declared that imports of steel from Canada no longer present a national security threat to

the U.S.. The period that imports of steel from Canada allegedly "threaten[ed] to impair the national security" of the U.S., 19 U.S.C. § 1862(c)(1)(A)(ii), was between June 1, 2018 and May 19, 2019. Therefore, the only period when imports of steel from Canada could be subject to Section 232 actions seeking to "adjust imports" is between June 1, 2018 and May 19, 2019.

83.    Plaintiff's 2 exclusion requests relating to ERW EndurAlloy™ steel tubing were denied by BIS on June 7, 2020 even though the President issued Proclamation 9894 more than a year prior. Proclamation 9894 asserted that steel imports from Canada no longer present a national security threat to the U.S. The June 7, 2020 BIS determination to deny Plaintiff's ERW EndurAlloy™ applications could not serve to "adjust imports" of steel imported from Canada had already been made (*i.e.,* between June 1, 2018 and May 19, 2019).

84.    Actions under Section 232, including determinations by the Department to grant or deny exclusion requests, are only authorized to "adjust imports" so as to "safeguard[] national security" and are, therefore, for reasons other than the raising of revenue. *See* 19 U.S.C. § 1862.

85.    Defendants have no ongoing interest in deterring or adjusting imports of steel from Canada after May 20, 2019 because steel imports from Canada no longer presented a national security threat to the U.S.

86.    There is no justifiable rationale for the Department's denial of Plaintiff's 2 ERW tubing exclusion applications. No denial of Plaintiff's pending exclusions applications by BIS could serve to retroactively "adjust imports" already entered by Plaintiff between June 1, 2018 and May 19, 2019. Where there is no possibility that the actions will "adjust imports" of steel imported from Canada going forward, the issuance of denial determinations are not lawful actions under Section 232, and must be set aside.

87.     The Department's failure to act by *granting* MLM's ERW tubing exclusion applications is arbitrary and capricious, an abuse of discretion, not in accordance with the law, in excess of statutory authority, and without observance of procedures required by law.

## COUNT III

88.     Paragraphs 1 through 87 of this Complaint are restated and incorporated by reference as though fully set forth herein.

89.     Actions taken by the President under Section 232 must seek to "adjust imports" of articles specifically investigated and identified in the Commerce Report.

90.     Steel articles exported from the U.S. in a finished condition, and returned to the U.S. after repair and alteration abroad, and qualifying for classification under subheading 9802.00.50, HTSUS, cannot be subject to Section 232 duties because *inter alia* imposing additional duties on re-imported, altered articles cannot possibly serve to "adjust imports" of the steel articles identified in the Commerce Report and Proclamation 9705.

91.     The steel articles exported from the U.S. for processing in Canada by ETI into EndurAlloy™ were, at the time of their U.S. exportation, either U.S.-origin articles of which no duties were owed or collected, or foreign-origin articles which had already been imported and on which duties (including any applicable Section 232 duties) were paid at the time of their original entry into U.S. commerce. The Canadian processing of these steel articles by ETI did not create new articles of commerce; the EndurAlloy™ tubing remains identifiable upon their re-importation into the U.S. as the same articles that were previously exported, albeit with an advanced value and improved condition. *See* subheading 9802.00.50, HTSUS ("articles returned to the United States after having been exported to be <u>advanced in value or improved in condition</u> by any process of manufacture or other means: Other." (emphasis added)).

92.     Imposing Section 232 duties on *alterations* performed in Canada of goods already imported into the U.S., duty paid, or of U.S.-origin, does not serve to "adjust imports" of goods described in Proclamation 9705; *see also*, U.S. Note 16(b), Subchapter III, Chapter 99, HTSUS. Therefore, CBP's assessment of Section 232 duties on articles qualifying for repair and alteration treatment under subheading 9802.00.50, HTSUS, is contrary to law.

93.     Altered steel articles are not described in the scope of the Section 232 investigation, nor in the Commerce Report. The Commerce Report does not identify that the re-importation of repaired or altered goods abroad poses any threat to U.S. national security. The Commerce Report does not recommend that the President take any action to adjust or otherwise affect the return of altered steel articles, regardless of their origin. The Steel Proclamations do not identify re-importations of altered steel goods as presenting any threat to U.S. national security.

94.     U.S. Note 16(b) to Subchapter III of Chapter 99, HTSUS does not direct CBP to assess Section 232 duties on re-importations of altered steel goods. Goods qualifying for repair and alteration treatment under subheading 9802.00.50, HTSUS, cannot be subject to the additional Section 232 duties because subheading 9802.00.50, HTSUS, is not identified in U.S. Note 16(b) to Subchapter III of Chapter 99, HTSUS. Accordingly, goods classified under subheading 9802.0050, HTSUS, cannot be subject to "the rates of duty set forth in heading 9903.80.01." *See* Proclamation 9705.

95.     The first mention of Chapter 98 goods occurs in Note 16(a) of HTSUS 2018 Rev. 4, Subchapter III of Chapter 99, which was published on or around May 1, 2018. To the extent this tariff revision seeks to expand the coverage beyond the products covered in the original proclamation of March 8, 2018, and was published more than 90 days after the President's January 11, 2018 receipt of the Commerce Report, 19 U.S.C. § 1862(c)(1)(A)(ii), and more than

15 days after the March 8, 2018 implementation of Section 232 actions. *Id.* § 1862(c)(1)(B), it is ultra vires as in excess of the President's statutorily delegated authority.

96.     The language of Note 16(a) of HTSUS 2018 Rev. 4, Subchapter III, Chapter 99, directs the assessment of duties on goods classified under Chapter 98 according to the "terms of such provision and applicable U.S. [CBP] regulations[.]" Goods qualifying for repair and alteration treatment under subheading 9802.00.50, HTSUS, and altered in a NAFTA member country, are dutiable according to the terms of the Customs Regulations, including 19 C.F.R. § 181.64, to the extent Note 16(a)(i) to Subchapter III of Chapter 99, HTSUS, is valid. The terms of subheading 9802.00.50, HTSUS, and 19 C.F.R. § 181.64, do not allow the imposition of additional 25% duties under Section 232. Rather, the calculation methodology set forth in subheading 9802.00.50, HTSUS, which relies on 19 C.F.R. § 181.64 to determine the duties applicable on repaired or altered merchandise upon return to the U.S. applies without application of Section 232 duties.

97.     CBP's CSMS No. 42355735 of April 13, 2020 is an unlawful action seeking "to adjust imports" and attempts to subject goods classifiable under subheading 9802.00.50, HTSUS, to Section 232 duties of 25% by applying such duties to the cost or value of repairs, alterations, or processing performed abroad, but this modification is untimely under 19 U.S.C. § 1862(c). CBP has no independent power to impose such duties and its action is therefore ultra vires agency action which must be set aside under the APA.

98.     CBP's CSMS No. 42355735 of April 13, 2020 conflicts with the language of subheading 9802.00.50, HTSUS, U.S. Note 3, the North American Free Trade Agreement ("NAFTA"), CBP regulations, 19 C.F.R. § 181.64, the language of the Proclamation 9705, of March 15, 2018, and Proclamation 9759 of May 31, 2018, and conflicts with Subchapter III of

Chapter 99, HTSUS, § 1862(c); and is therefore ultra vires agency action which must be set aside under the APA.

99.     CBP's assessment of Section 232 duties on Plaintiff's re-imported steel products which are altered in Canada, a NAFTA member country, are contrary to law and must be set aside.

100.     Moreover, CSMS No. 42355735 of April 13, 2020 is an unlawful action seeking "to adjust imports" of re-imported goods classifiable under subheading 9802.00.50, HTSUS, by applying 25% duties to the cost or value of repairs, alterations, or processing performed abroad, but this modification is untimely under 19 U.S.C. § 1862(c) and is therefore ultra vires agency action which must be set aside under the APA.

**COUNT IV**

101.     Paragraphs 1 through 100 of this Complaint are restated and incorporated by reference as though fully set forth herein.

102.     The Commerce Report is subject to review under the APA, 5 U.S.C. §§ 701-706.

103.     The Commerce Report is in excess of statutory jurisdiction, authority or limitations insofar as it was not published in the Federal Register as required by 19 U.S.C. § 1862(b)(3)(B), and otherwise fails to abide by mandatory requirements of Section 232, and therefore is not in accordance with law, in violation of the APA.

**COUNT V**

104.     Paragraphs 1 through 103 of this Complaint are restated and incorporated by reference as though fully set forth herein.

105.     The Constitution's Due Process Clause provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

106.   The Federal Circuit has stated that "an importer may be entitled to procedural due process regarding the resolution of disputed facts involved in a case of foreign commerce when the importer faces a deprivation of 'life, liberty, or property' by the Federal Government." *NEC Corp. v. United States*, 151 F.3d 1361, 1370 (Fed. Cir. 1998).

107.   Plaintiff has faced harm from the additional tariffs imposed by Section 232 without benefit of due process as the result of the issuance of (i) Proclamation 9759 of May 31, 2018, which is untimely and imposed duties on steel imports from Canada; and (ii) the untimely and unlawful attempt to expand Section 232 duties to include products eligible for entry under subheading 9802.00.50, HTSUS, occurring in the May 1, 2018 modification of the HTSUS in 2018 HTSUS Rev. 4, which included additional U.S. Note 16(a)(i) to Subchapter III, Chapter 99, HTSUS, and CBP's interpretation thereof in CSMS No. 42355735 of April 13, 2020, which conflicts with the language of subheading 9802.00.50, HTSUS, US Notes to Subchapter III of Chapter 99, HTSUS, U.S. Note 3, the North American Free Trade Agreement ("NAFTA"), CBP regulations, 19 C.F.R. § 181.64, the language of the Proclamation 9705, of March 15, 2018, and Proclamation 9759 of May 31, 2018.

108.   In violation of the Constitution, Plaintiff has been deprived of its property without due process of law.

## COUNT VI

109.   Paragraphs 1 through 108 of this Complaint are restated and incorporated by reference as though fully set forth herein.

110.   Section 232 is an unconstitutional delegation of authority from Congress to the Executive Branch lacking an intelligible principle by which the Executive is to Act, violating the

delegation doctrine. The Section 232 duties applied to Plaintiff's products pursuant to the Steel Proclamations are an unlawful exercise of legislative authority and are void *ab initio*.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

111.    WHEREFORE, Plaintiffs requests the following relief:

    a.    An order requiring Defendants to refund all Section 232 duties paid by Plaintiff, together with interest, found by this Court to have been imposed contrary to law;

    b.    An order remanding to the Department with instructions to grant Plaintiff's Section 232 applications for exclusion from the Section 232 duties, and ordering the refund of all Section 232 duties paid by Plaintiff, together with interest;

    c.    A declaration that the Commerce Report and the Steel Proclamations are contrary to law and therefore invalid and ordering the refund of all Section 232 duties paid by Plaintiff, together with interest;

    d.    A declaration that the Steel Proclamations and the duties imposed thereunder are unconstitutional because they violate the Fifth Amendment's due process clause;

    e.    A declaration that the Steel Proclamations and the duties imposed thereunder are an unconstitutional delegation of legislative power to the Executive Branch and ordering the refund of all Section 232 duties paid by Plaintiff, together with interest;

    f.    That the Court award Plaintiffs their costs and a reasonable attorney fee under applicable provisions of law; and

    g.  That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
    Richard F. O'Neill
    999 Third Ave., Ste. 2525
    Seattle, WA 98104
    (206) 518-9335
    roneill@npwny.com

/s/ John M. Peterson
    John M. Peterson
    Patrick B. Klein
    One Exchange Plaza
    55 Broadway, Suite 2602
    New York, NY 10006
    (212) 635-2730
    jpeterson@npwny.com

Dated:  June 24, 2020