Slip Op. 21-77

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **MAPLE LEAF MARKETING, INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES ET AL.,**<br><br>    **Defendants.** | **Before: Claire R. Kelly, Gary S. Katzmann, and Jane A. Restani, Judges**<br><br>**Court No. 20-00125** |

## <u>OPINION AND ORDER</u>

[Granting Defendants' partial motion to dismiss Plaintiff's complaint.]

Dated: June 22, 2021

<u>Richard F. O'Neill</u> and <u>John M. Peterson</u>, Neville Peterson LLP, of New York, NY, argued for plaintiff.  Also on the brief was <u>Patrick B. Klein</u>.

<u>Ann C. Motto</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendants.  Also on the briefs were <u>Jeffrey Bossert Clark</u>, Acting Assistant Attorney General, <u>Jennifer B. Dickey</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.

Kelly, Judge:  Defendants move for partial dismissal of Plaintiff Maple Leaf Marketing Inc.'s ("Maple Leaf" or "Plaintiff") challenge to the constitutionality and lawfulness of duties imposed on re-imported steel tubing from Canada pursuant to Section 232 of the Trade Expansion Act of 1962 ("Section 232"), as amended, 19 U.S.C. § 1862 (2018).[1]  <u>See</u> Defs.' Partial Mot. to Dismiss Compl., Sept. 23, 2020, ECF No.

---

[1] Further citations to the Trade Expansion Act of 1962, as amended, are to the relevant provisions of the U.S. Code, 2018 edition.

14 ("Defs.' Partial Mot. to Dismiss"); see also Compl., June 24, 2020, ECF No. 5.

Defendants seek dismissal of any challenge raised by Plaintiff to any decision of U.S.

Customs and Border Protection ("Customs" or "CBP") when implementing duties

imposed pursuant to Section 232 ("Section 232 duties"), either for lack of jurisdiction

or as abandoned or waived.  See Defs.' Partial Mot. to Dismiss at 20–26;[2] see also

Defs.' Reply Supp. Partial Mot. to Dismiss at 20–24, Jan. 15, 2021, ECF No. 22 ("Defs.'

Reply Br.").  Defendants contend that all remaining counts, except for Count II,

should be dismissed for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6) of the U.S. Court of International Trade ("USCIT").  See

Defs.' Partial Mot. to Dismiss at 1; see also USCIT R. 12(b)(6).  Plaintiff requests the

court deny Defendants' motion, arguing that the court has jurisdiction over its claims,

and maintaining that the remaining counts plausibly assert that the Government's

imposition and assessment of Section 232 duties in this instance violates the Due

Process Clause of the Fifth Amendment to the U.S. Constitution, is untimely under

---

[2] Defendants request dismissal of the U.S. Trade Representative ("USTR") from this action.  See Defs.' Partial Mot. to Dismiss at 19–20.  Defendants argue that, contrary to Plaintiff's allegations, the USTR is not generally responsible for publishing the Harmonized Tariff Schedule of the United States ("HTSUS"), that the President's proclamation did not direct the USTR to make changes to the HTSUS, and that the USTR did not in fact make any such changes to the HTSUS.  See Defs.' Partial Mot. to Dismiss at 19–20; see also Defs.' Reply Br. at 23–24.  Defendants argue that Plaintiff otherwise fails to allege that the USTR acted unlawfully.  See Defs.' Partial Mot. to Dismiss at 19–20.  As Plaintiff here challenges the actions of the Government more broadly, and the parties have not briefed the issue with respect to Count II—which Defendants here do not challenge—the court declines to dismiss the USTR at the motion to dismiss stage.

19 U.S.C. § 1862, and is otherwise an <u>ultra vires</u> and unlawful exercise of delegated

statutory authority.[3]  <u>See</u> Pl.'s Resp. Opp. [Defs.' Partial Mot. to Dismiss] at 1–6, Dec.

11, 2020, ECF No. 18 ("Pl.'s Br.").  For the following reasons, Defendants' partial

motion to dismiss is granted.

## BACKGROUND

Section 232 empowers the President to adjust imports of articles that may

threaten to impair the national security of the United States.  The Secretary of

Commerce ("Secretary"), in consultation with the Secretary of Defense and other

appropriate officers, conducts an investigation to determine the effects on the

national security of imports of certain articles.  <u>See</u> 19 U.S.C. § 1862(b).  The

Secretary submits to the President a report that details the investigation's findings,

---

[3] Claiming that Defendants' motion "relies on matters outside the pleadings," Plaintiff also "invites the court" to treat Defendants' motion to dismiss as a motion for summary judgment pursuant to USCIT Rule 12(d).  <u>See</u> Pl.'s Br. at 7 n.1. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  USCIT R. 12(d).  "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  <u>Id.</u>  However, where "there has been no serious contention that the facts are contested[,]" the issues are purely legal and the court need not convert a motion to dismiss to a motion for summary judgment.  <u>See, e.g.</u>, <u>Easter v. United States</u>, 575 F.3d 1332, 1336 (Fed. Cir. 2009) ("<u>Easter</u>").  Here, Plaintiff does not identify what matters Defendants relied upon that were beyond the pleadings.  To the extent that Plaintiff references Defendants' attachment of Cargo Systems Messaging Service ("CSMS") messages to their motion, Defendants aver that Plaintiff's complaint incorporated the CSMS messages by reference, and thus are appropriate to consider on a motion to dismiss. Defs.' Reply Br. at 1–2 n.1; <u>see also</u> Compl. ¶¶ 63, 97–98, 100, 207.  Since there are otherwise no serious contentions that the facts are disputed, <u>see, e.g.</u>, <u>Easter</u>, 575 F.3d at 1336, and the matter before the court is purely legal, the court declines the Plaintiff's invitation.

advises the President if the subject article is "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security," and, based on such findings, recommends action or inaction.  See id. § 1862(b)(3)(A).   Within ninety days after receiving the Secretary's report, the President must decide whether he or she concurs; if so, the President must also determine the "nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security."   Id. § 1862(c)(1)(A)(ii).  The President has fifteen days after the day on which he or she determines to take action to implement that action. Id. § 1862(c)(1)(B).  Should the President decide that the action to be taken under  § 1862(c)(1) is "the negotiation of an agreement which limits or restricts" imports of articles that threaten to "impair the national security," and either "no such agreement is entered into before the date that is 180 days after the date on which the President ma[de] the determination[,]" or such agreement has entered into force but "is not being carried out or is ineffective in eliminating the threat to the national security[,] . . . the President shall take such other actions as the President deems necessary[.]" Id. § 1862(c)(3)(A).  The President "shall publish in the Federal Register notice of any additional actions being taken

under [19 U.S.C. § 1862] by reason of [19 U.S.C. § 1862 (c)(3)(A)]." See id. § 1862(c)(3)(A).[4]

On April 19, 2017, the Secretary initiated a Section 232 investigation to determine the effects of steel imports on national security. See Notice Request for Public Comments and Public Hearing on Section 232 National Security Investigation of Imports of Steel, 82 Fed. Reg. 19,205, 19,205 (Dep't Commerce Apr. 26, 2017). The product scope of the investigation covered "steel mill products . . . which are defined at the Harmonized System ("HS") 6-digit level as: 720610 through 721650, 721699 through 730110, 730210, 730240 through 730290, and 730410 through 730690, including any subsequent revisions to these HS codes." Publication of a Report on the Effect of Imports of Steel on the National Security, 85 Fed. Reg. 40,202, 40,209 (Dep't Commerce July 6, 2020) (an investigation conducted under [Section 232]) ("Steel Report").

On January 11, 2018, the Secretary delivered the report to the President. See Proclamation 9705 of March 8, 2018, 83 Fed. Reg. 11,625, 11,625 (Mar. 15, 2018) ("Proclamation 9705"); see also Steel Report, 85 Fed. Reg. 40,202. The Steel Report "conclude[d] that the present quantities and circumstance of steel imports are 'weakening our internal economy' and threaten to impair the national security as defined in Section 232[,]" 85 Fed. Reg. at 40,204, and recommended that the President

---

[4] If the President decides not to take further action, "the President shall publish in the Federal Register such determination and the reasons on which such determination is based." 19 U.S.C. § 1862(c)(3)(B).

"impose a [63 percent] quota or [24 percent] tariff on all steel products covered in this investigation imported into the United States[.]" Id. at 40,205.  "In selecting an alternative," the Steel Report also advised that "the President could determine that specific countries should be exempted from the proposed 63 percent quota or 24 percent tariff . . . based on an overriding economic or security interest of the United States." Id. at 40,226.

On March 8, 2018, within ninety days of receiving the report, the President issued Proclamation 9705.  See 83 Fed. Reg. at 11,625, 11,628.  Concurring with the Secretary's findings, the President announced a 25 percent ad valorem tariff on steel articles "imported from all countries except Canada and Mexico." Id. at 11,626 ¶ 8. Proclamation 9705 states that, except as otherwise provided, "all steel articles imports specified in the Annex shall be subject to an additional 25 percent ad valorem rate of duty[.]" Id. at 11,627 cl. 2.  The President implemented the tariffs by modifying Subchapter III of Chapter 99 of the Harmonized Tariff Schedule of the United States ("HTSUS") to add a new note and a new tariff provision under the heading 9903.80.01.  Id. at 11,627 cl. 2; see also id. at 11,629–30 (Annex to modify Chapter 99 of the [HTSUS]).  Namely, the Annex added Note 16 to Subchapter III of Chapter 99, which provides, in relevant part, the following:

> (a)     Heading 9903.80.01 sets forth the ordinary customs duty treatment applicable to all entries of iron or steel products from all countries, except products of Canada and of Mexico, classifiable in the headings or subheadings enumerated in this note. Such goods shall be subject to duty as provided herein. No special rates of duty shall be accorded to goods covered by heading

9903.80.01 under any tariff program enumerated in general note 3(c)(i) to the tariff schedule. All anti-dumping, countervailing, or other duties and charges applicable to such goods shall continue to be imposed.

(b)     The rates of duty set forth in heading 9903.80.01 apply to all imported products of iron or steel classifiable in the provisions enumerated in this subdivision:

(i)     flat-rolled products provided for in headings 7208, 7209, 7210, 7211, 7212, 7225 or 7226;

(ii)    bars and rods provided for in headings 7213, 7214, 7215, 7227, or 7228, angles, shapes and sections of 7216 (except subheadings 7216.61.00, 7216.69.00 or 7216.91.00); wire provided for in headings 7217 or 7229; sheet piling provided for in subheading 7301.10.00; rails provided for in subheading 7302.10; fish-plates and sole plates provided for in subheading 7302.40.00; and other products of iron or steel provided for in subheading 7302.90.00;

(iii)   tubes, pipes and hollow profiles provided for in heading 7304, or 7306; tubes and pipes provided for in heading 7305.

(iv)    ingots, other primary forms and semi-finished products provided for in heading 7206, 7207 or 7224; and

(v)     products of stainless steel provided for in heading 7218, 7219, 7220, 7221, 7222 or 7223.

Proclamation 9705, 83 Fed. Reg. at 11,629 (Annex).  With respect to Canada and Mexico, the President determined that it would be "necessary and appropriate . . . to continue ongoing discussions . . . and to exempt steel articles imports from these countries from the tariff, at least at this time."  Id. at 11,626 ¶ 10.

On March 22, 2018,[5] the President amended Proclamation 9705 to temporarily

exempt from Section 232 duties steel articles imported from several more countries,[6]

pending negotiations with those countries.  See Proclamation 9711 of March 22, 2018,

83 Fed. Reg. 13,361, 13,363–65 (Mar. 28, 2018) ("Proclamation 9711").  On April 30,

2018, having reached agreements in principle with the Argentine Republic

("Argentina"), the Commonwealth of Australia ("Australia"), and Federative Republic

of Brazil ("Brazil"), the President extended the exemption from Section 232 duties on

steel imports from those countries indefinitely, but declared that the exemption on

steel imports from Canada would expire on June 1, 2018.  See Proclamation 9740 of

April 30, 2018, 83 Fed. Reg. 20,683, 20,684–66 (May 7, 2018) ("Proclamation 9740").

The proclamation also amended Note 16 in two noteworthy respects.  First,

Proclamation 9740 amended subdivision (a) to provide, inter alia, that:

> Goods for which entry is claimed under a provision of Chapter 98 and
> which are subject to [Section 232 duties] shall be eligible for and subject

---

[5] As recommended by the Secretary, see Proclamation 9705, 83 Fed. Reg. at 11,625, the President authorized the Secretary, in consultation with various other officials, to provide relief from Section 232 duties: "for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." Id. at 11,627 cl. 3.

[6] Proclamation 9711 states that the United States:

> is continuing discussions with Canada and Mexico, as well as the
> following countries, on satisfactory alternative means to address the
> threatened impairment to the national security by imports of steel
> articles from those countries: the Commonwealth of Australia
> (Australia), the Argentine Republic (Argentina), the Republic of Korea
> (South Korea), the Federative Republic of Brazil (Brazil), and the
> European Union (EU) on behalf of its member countries.

83 Fed. Reg. at 13,361.

> to the terms of such provision . . . except that duties under subheading 9802.00.60 shall be assessed based upon the full value of the imported article.

83 Fed. Reg. at 20,687 (Annex).  Second, the proclamation amended subdivision (b) to provide, <u>inter alia</u>, that:

> Any reference above to iron or steel products classifiable in any heading or subheading of chapter 72 or 73, as the case may be, shall mean that any good provided for in the article description of such heading or subheading and of all its subordinate provisions (both legal and statistical) is covered by the provisions of this note and related tariff provisions.

<u>Id.</u> at 20,688 (Annex).  On May 31, 2018, the President issued <u>Proclamation 9759 of May 31, 2018</u>, which announced agreements on a range of measures with Argentina, Australia, and Brazil.   <u>See</u> 83 Fed. Reg. 25,857, 25,857–60 (June 5, 2018) ("<u>Proclamation 9759</u>").

The temporary exemption from Section 232 duties covering steel imports from Canada expired on June 1, 2018.  <u>See</u> <u>id.</u> at 25,858 ¶ 6 ("[I]t is necessary and appropriate, at this time, to maintain the current tariff level as it applies to other countries."); <u>see also</u> <u>Proclamation 9740</u>, 83 Fed. Reg. at 20,684 ¶ 7, 20,685 cl. 1. Thus, 25 percent tariffs on steel imports from Canada took effect 85 days after the President issued <u>Proclamation 9705</u>.

On July 6, 2018, Customs issued a message communicating the contents of <u>Proclamation 9705</u> to importers via its Cargo Systems Messaging Service ("CSMS"). <u>See</u> Defs.' Partial Mot. to Dismiss at Ex. 1 ("CSMS No. 18-000424").  Regarding the

Court No. 20-00125                                                    Page 10

applicability of Section 232 duties to products imported under the provisions of

Chapter 98 of the HTSUS, Customs stated that:

> where a valid claim for Chapter 98 treatment is made for goods that
> would have otherwise been subject to Section 232 duties (i.e., classifiable
> in one of the named provisions in Ch. 72, 73 or 76 and a product of a
> country other than the United States or an exempt country), Section 232
> duties are assessed in the same manner as regular customs duties. This
> means that goods eligible for Chapter 98 provisions that provide duty-
> free treatment are free of Section 232 duties. By contrast, where the
> Chapter 98 provision provides for the assessment of duties on a portion
> of the article, such as the value of the repair or other processing, Section
> 232 duties are to be assessed on that value. However, an exception
> occurs for subheading 9802.00.60, HTSUS. If covered goods are entered
> under this provision, Section 232 duties are to be assessed on the entire
> value of the articles.

CSMS No. 18-000424.

On May 19, 2019, the President proclaimed that the United States had come

to agreements with Canada and Mexico on "satisfactory alternative means to address

the threatened impairment of the national security posed by steel articles imports[.]"

Proclamation 9894 of May 19, 2019, 84 Fed. Reg. 23,987, 23,987 ¶ 5 (May 23, 2019).

Therefore, the President "exclude[d] Canada and Mexico from the tariff proclaimed

in Proclamation 9705, as amended." Id. at 23,988–89 ¶ 6, cl. 1. On April 13, 2020,

Customs sent a CSMS message stating that:

> where a valid claim for Chapter 98 treatment is made for goods that are
> also subject to Section 232 duties (i.e., classifiable in one of the named
> provisions in Ch. 72, 73 or 76 and a product of a country other than the
> United States or an exempt country), Chapter 98 treatment will be
> applied. However, in addition, Section 232 duties, under Chapter 99,
> will be assessed independently from any Chapter 98 treatment and in
> accordance with the applicable chapter 99 note. Furthermore, where the
> Chapter 98 provision provides for the assessment of duties on a portion

> of the article, such as the value of the repair or other processing, Section
> 232 duties are to be assessed on that value. However, an exception
> occurs for subheading 9802.00.60, HTSUS. If covered goods are entered
> under this provision, Section 232 duties are to be assessed on the entire
> value of the articles.

See Defs.' Partial Mot. to Dismiss at Ex. 2 ("CSMS No. 42355735") (emphasis

removed).

According to the complaint, Maple Leaf is the exclusive U.S. importer and

distributor of a specially hardened and boronized J-55 steel tubing product called

EndurAlloy™.  Compl. ¶¶ 11, 47.  EndurAlloy™ is "the end-product of a specialized

chemical deposition alteration treatment performed exclusively" by a company in

Canada which sources steel tubing of certain specifications from U.S. vendors, and

subjects the tubing to a proprietary alteration treatment.  See id. ¶ 48.  The result is

a steel tubing product "with significantly improved hardness and technical

advantages."  Id. ¶ 48.   Although primarily classified under HTSUS subheadings

7304 and 7306, id. ¶ 51, Maple Leaf asserted during entry that its imports of

EndurAlloy™ steel tubing qualified for special treatment under HTSUS subheading

9802.00.50 "as goods subject to repair and alteration treatments abroad."  Id. ¶ 53.

As of its first importation  of EndurAlloy™ steel tubing on June 25, 2018, Maple Leaf

alleges that CBP has assessed Section 232 duties on the cost or value of repairs or

alterations to its steel imports that qualify for special treatment under Chapter 98 of

the HTSUS.  See id. ¶¶ 21, 62–63, 92.

On June 24, 2020, Plaintiff Maple Leaf commenced this challenge to the lawfulness of the Government's assessment of Section 232 duties on its imports of steel from Canada.  See Compl. ¶ 1; Summons, June 24, 2020, ECF No. 1.  Count I contests the President's imposition of Section 232 duties on steel imports from Canada as untimely.  See Compl. at ¶¶ 71–77.  Count II contests the Bureau of Industry and Security's denial of Plaintiff's request for exclusion from Section 232 duties.  See id. ¶¶ 78–87.  Count III alleges that the Government's assessment of Section 232 duties on steel articles qualifying for repair and alteration treatment under Chapter 98 of the HTSUS, as well as CBP's guidance communicating the applicability of Section 232 duties to steel imports qualifying for treatment under Chapter 98, are unlawful.  Compl. ¶¶ 88–100.  Count IV alleges that the Government acted in excess of its statutory authority under Section 232 since it failed to publish the Steel Report in the Federal Register.  See Compl. ¶¶ 4, 101–03; see also 19 U.S.C. § 1862(b)(3)(B).  Count V claims that the Government's imposition of Section 232 duties on its entries of steel articles violates its right to due process under the U.S. Constitution.  See Compl. ¶¶ 104–08; see also U.S. CONST. amend. V.  Count VI claims that Section 232 is an unconstitutional delegation of authority to the Executive Branch.  See Compl. ¶¶ 109–10.  Defendants timely moved to dismiss all counts raised in Plaintiff's complaint, except for Count II.  See generally Defs.' Partial Mot. to Dismiss.

## JURISDCTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1581(i)(2), (4) (2018).[7]  In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the plaintiff.  See Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 n.13 (Fed. Cir. 1993); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679 (citations omitted).  Interpretations of the scope of a presidential proclamation is a question of law.  See Florsheim Shoe Co. v. United States, 19 CIT 295, 297, 880 F. Supp. 848, 850–51 (1995).

## DISCUSSION

## I.   Duties on Re-Imported Steel Tubing from Canada

Defendants seek dismissal of Plaintiff's challenges to the timeliness of the President's imposition of Section 232 duties on imports of steel articles from Canada

---

[7] Further citations to Title 28 of the U.S. Code are to the 2018 edition.

and goods imported under Chapter 98 of the HTSUS for failure to state a claim upon which relief can be granted.  See generally Defs.' Partial Mot. to Dismiss; see also Compl. ¶¶ 35, 71–77, 88–100 (Counts I & III).  Defendants argue that Proclamation 9705 complies with Section 232's timing provisions because it simultaneously imposed Section 232 duties on steel imports from Canada and exempted from operation of Section 232 duties those imports pending negotiations.  See Defs.' Partial Mot. to Dismiss at 16–18.  Defendants assert that Plaintiff otherwise fails to plausibly allege that the President's imposition of Section 232 duties on Chapter 98 goods was unlawful.  See id. at 30–41.  Plaintiff counters that Proclamation 9705 did not impose duties on goods from Canada or on goods entered under Chapter 98 of the HTSUS, and that subsequent proclamations seeking to do so are untimely or otherwise unlawful.  See Pl.'s Br. at 16–35.  Plaintiff claims that even if the President commenced negotiations under 19 U.S.C. § 1862(c)(3)(A), the statute requires that the President negotiate with Canada for 180 days before imposing Section 232 duties. See id. at 29.  For the following reasons, the court holds that the President lawfully imposed Section 232 duties on Plaintiff's imports of steel articles from Canada and goods covered under Chapter 98 of the HTSUS, and therefore dismisses Counts I and III of Plaintiff's complaint for failure to state a claim upon which relief can be granted.

## A. Section 232 Duties on Steel Imports from Canada

In issuing Proclamation 9705, the President took timely action consistent with his powers under 19 U.S.C. § 1862(c)(1) to adjust steel imports from Canada.  As

Court No. 20-00125                                                          Page 15

explained, Section 232 empowers the President, within ninety days of receiving a report from the Secretary finding that an article is being imported under circumstances that threaten the national security of the United States, to "determine the nature and duration of the action that" in his judgment must be taken to adjust imports that threaten the national security.    See  19  U.S.C. § 1862(c)(1)(A)(ii).   Upon so deciding, the President has 15 days to take remedial action.  Id. § 1862(c)(1)(B).  In seeking to remedy the threat, if the President decides that the action to be taken under  19 U.S.C. § 1862(c)(1) is the negotiation of an agreement "which limits or restricts" imports of the article that threatens to impair the national security, and "no such agreement is entered into before the date that is 180 days after the date on which the President makes the determination under [19 U.S.C. § 1862(c)(1)(A)] to take such action, or . . . such an agreement that has been entered into is not being carried out or is ineffective in eliminating the threat to the national security posed by imports of [the subject] article," the President shall take other action as he deems necessary.  Id. § 1862(c)(3).

Proclamation 9705 imposed a 25 percent tariff on all steel imports while exempting imports from Canada and Mexico pending the outcome of ongoing negotiations.  The President has the power to determine the nature and duration of the action to be taken to adjust imports that, in his judgment, will protect the national security.  The "nature and duration" of the action the President deems necessary to adjust imports may be a contingent tariff.  Such a tariff may be contingent upon

whatever condition the President, in his judgment, determines will adjust imports and protect the national security.  See 19 U.S.C. § 1862(c)(1)(A)(ii).

Here, the President's judgment led him to impose a contingent tariff on steel imports from Canada, subject to the condition that negotiations with Canada fail to result in a satisfactory agreement.  The language of Proclamation 9705 indicates that the President's action to adjust imports included a decision to impose a tariff on all steel imports and temporarily exempt steel imports from Canada in hopes of reaching a satisfactory agreement.  The President "determined that the necessary and appropriate means to address the threat to the national security posed by imports of steel articles from Canada and Mexico is to continue ongoing discussions with these countries and to exempt steel articles imports from these countries from the tariff, at least at this time."  Proclamation 9705, 83 Fed. Reg. at 11,626 ¶ 10.  The President's use of the word "exempt" and qualification that Section 232 duties would not apply "at this time" when describing the action to be taken with respect to steel imports from Canada in the prefatory section of the proclamation indicate a temporary exemption from the effect of the President's imposition of Section 232 duties for the pendency of ongoing negotiations.  The President then observed that "[w]ithout this tariff and satisfactory outcomes in ongoing negotiations with Canada and Mexico, the industry will continue to decline[.]"  Id. at 11,627 ¶ 11.  Accordingly, the President directed, in clause two of Proclamation 9705, that "an additional 25 percent ad valorem rate of duty" shall apply "to imports of steel articles from all countries except

Canada and Mexico." Id. at 11,627 cl. 2.  The President's imposition of Section 232 duties on steel imports from Canada, contingent upon failure to negotiate a satisfactory agreement, falls within the President's power to determine the nature and duration of the action to be taken to adjust imports granted by 19 U.S.C. § 1862(c)(1).  Subsequent proclamations regarding the status of negotiations and further exemptions from Section 232 duties did not enlarge the action set out in Proclamation 9705 with respect to Canada so as to implicate the statute's procedural safeguards.  Cf. Transpacific Steel LLC v. United States, 44 CIT __, __, 466 F. Supp. 3d 1246, 1251–53 (2020).  The court holds that the President's actions in this instance were timely and authorized.  See 19 U.S.C. § 1862(c)(1).

Plaintiff submits that Congress limited the President's authority in such a way as to preclude the contingent action taken here; however, Section 232 empowers the President to determine the "nature . . . of the action" that, in his judgment, "must be taken to adjust the imports of the article" that threatens to impair the national security.  See id. § 1862(c)(1)(A)(ii).  Nothing in the statute purports to limit the President's authority to act without contingencies; to the contrary, the broad grant of authority under 19 U.S.C. § 1862(c)(1) empowers the President to exercise his judgment and determine the nature of the action necessary to adjust imports that threaten the national security.  Plaintiff advances the view that the President must take a singular action, but, even if Plaintiff is correct that the President must take a singular action, Plaintiff does not explain its view of what singular action would mean

under the statute.  Nor does Plaintiff explain how here the President's action, though

multifaceted, cannot constitute a singular action taken to adjust imports.

Similarly, Plaintiff argues that the President's determination to continue

ongoing discussions does not indicate that the President commenced negotiations

pursuant to 19 U.S.C. § 1862(c)(3).  See Pl.'s Br. at 25–28.  According to Plaintiff, the

President did not "say the words" necessary to commence negotiations, and thus the

imposition of tariffs following the failure of negotiations is unlawful.  See id.

However, the President's power to take contingent action here stems from 19 U.S.C.

§ 1862(c)(1), not subsection (c)(3).[8]  Subsection (c)(1) does not require the President

to "say the words"; to the contrary, 19 U.S.C. § 1862(c)(1) empowers the President to

---

[8] As both parties recognize, 19 U.S.C. § 1862(c)(3) further empowers the President to
"take such other actions" necessary should negotiations fail.  See Defs.' Partial Mot.
to Dismiss at 16–18; Pl.'s Br. at 23–24.  Thus, had the President not imposed a
contingent tariff in Proclamation 9705, he arguably would have nonetheless been able
to impose a tariff, or some other measure, pursuant to 19 U.S.C. § 1862(c)(3).
However, the court need not reach whether 19 U.S.C. § 1862(c)(3) would apply in this
case, as the President's power stems from 19 U.S.C. § 1862(c)(1).  Further, although
Plaintiff argues that 19 U.S.C. § 1862 requires that the President negotiate the entire
180 days before taking further action, see Pl.'s Br. at 29–35, neither the wording of
the statute nor its legislative history would seem to compel such a result.  See
Universal Steel Prods., Inc. v. United States, 45 CIT __, __, 495 F. Supp. 3d 1336,
1352–54 (2021).  In relevant part, 19 U.S.C. § 1862(c)(3) states that "[i]f . . . the action
taken by the President . . . is the negotiation of an agreement which limits or restricts"
imports "of the article that threatens to impair national security, and . . . no such
agreement is entered into before the date that is 180 days after the date on which the
President makes the determination under [19 U.S.C. § 1862(c)(1)(A)] to take such
action," "the President shall take such other actions as the President deems necessary
to adjust the imports of such article so that such imports will not threaten to impair
the national security."  19 U.S.C. § 1862(c)(3)(A).  The statute uses the word "if",
denoting two conditions which, if not met, require further action.  19 U.S.C.
§ 1862(c)(3)(A)(ii).

Court No. 20-00125                                                                    Page 19

"determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article[.]"   Id. § 1862(c)(1)(A)(ii).

Finally, Plaintiff submits that the language of Proclamation 9705 indicates that the President himself elected not to take action against steel imports from Canada because "[a]n 'exemption' from action is in no uncertain terms a formal declination to act[.]"[9]  Pl.'s Br. at 20.  Here, however, the exemption was not a formal declination to act, but rather a necessary component of the contingent tariff imposed by the Proclamation.  As discussed above, Proclamation 9705 imposed a tariff on all steel imports while exempting imports from Canada and Mexico pending the outcome of ongoing negotiations.   Therefore, the court dismisses Count I of Plaintiff's complaint for failure to state a claim.

---

[9] Clause 2 to Proclamation 9705 provides:

> In order to establish increases in the duty rate on imports of steel articles, subchapter III of chapter 99 of the HTSUS is modified as provided in the Annex to this proclamation. Except as otherwise provided in this proclamation, or in notices published pursuant to clause 3 of this proclamation, all steel articles imports specified in the Annex shall be subject to an additional 25 percent ad valorem rate of duty with respect to goods entered, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern daylight time on March 23, 2018. This rate of duty, which is in addition to any other duties, fees, exactions, and charges applicable to such imported steel articles, shall apply to imports of steel articles from all countries except Canada and Mexico.

83 Fed. Reg. at 11,627 cl. 2.

**B. Section 232 Duties on Goods Eligible for Chapter 98 Classification**

Proclamation 9705 lawfully imposes Section 232 duties on imports of steel articles, including those that are re-imported under Chapter 98.  In Proclamation 9705, the President added Note 16 to Chapter 99, which broadly encompasses goods that are classifiable as steel articles.  Proclamation 9740 later explains the availability of Chapter 98 entry for goods subject to the Section 232 duties.  Articulating as much does not invalidate the President's imposition of Section 232 duties on imports of steel articles from Canada.[10]

Proclamation 9705 provides that "all steel articles imports specified in the Annex shall be subject to an additional 25 percent ad valorem rate of duty[.]"  83 Fed. Reg. at 11,627 cl. 2.  The Annex to Proclamation 9705 amends Chapter 99 of the HTSUS by adding Note 16, which provides that goods classifiable in specific subheadings "shall be subject" to Section 232 duties and lists the specific

---

[10] Plaintiff also argues that Section 232 duties cannot be applied to goods re-imported under Chapter 98 because there was no specific investigation by the Secretary into the effect of Chapter 98 goods on national security.  See Pl.'s Br. at 30–35.  According to Plaintiff, imposing tariffs on goods qualifying for special duty treatment as goods repaired or altered abroad under Chapter 98 amounts to a tariff on services performed abroad, and such a tariff is unlawful because services were not addressed in the Secretary's report.  See id. at 33–34.  Again, steel articles imported under Chapter 98 are still steel articles, regardless of whether they have been repaired or altered.  See subheading 9802.00.50, HTSUS (2018); U.S. Note 3(c), Subchapter II, Chapter 98, HTSUS (2018).  For the same reasons set forth above, Plaintiff's contentions fail.

Court No. 20-00125                                                    Page 21

subheadings.[11]  Proclamation 9705, 83 Fed. Reg. at 11,629 (Annex).  Thus, Section

232 duties apply to all steel imports classifiable in the subheadings delineated in the

Annex.  Plaintiff's complaint acknowledges that the disputed goods were "primarily

classified upon entry under subheadings of 7304 and 7306 [of the] HTSUS," Compl.

¶ 51, and both headings are enumerated in the Annex.  See Proclamation 9705, 83

Fed. Reg. at 11,629 (Annex).  Plaintiff does not point to any language in Proclamation

9705 that purports to preclude steel articles qualifying for entry under Chapter 98.

---

[11] The Section 232 duties apply to the following subheadings:

> (i) flat-rolled products provided for in headings 7208, 7209, 7210, 7211, 7212, 7225 or 7226;

> (ii) bars and rods provided for in headings 7213, 7214, 7215, 7227, or 7228, angles, shapes and sections of 7216 (except subheadings 7216.61.00, 7216.69.00 or 7216.91.00); wire provided for in headings 7217 or 7229; sheet piling provided for in subheading 7301.10.00; rails provided for in subheading 7302.10; fish-plates and sole plates provided for in subheading 7302.40.00; and other products of iron or steel provided for in subheading 7302.90.00;

> (iii) tubes, pipes and hollow profiles provided for in heading 7304, or 7306; tubes and pipes provided for in heading 7305.

> (iv) ingots, other primary forms and semi-finished products provided for in heading 7206, 7207 or 7224; and

> (v) products of stainless steel provided for in heading 7218, 7219, 7220, 7221, 7222 or 7223.

Proclamation 9705, 83 Fed. Reg. at 11,629 (Annex).

Contrary to Plaintiff's contention, <u>Proclamation 9740</u> did not expand Section 232 duties to include articles re-imported under Chapter 98.[12] Rather, in reaffirming that Section 232 duties apply to imports of all steel articles, <u>Proclamation 9740</u> explained that covered imports were nonetheless eligible for special duty treatment under Chapter 98.  83 Fed. Reg. at 20,687 (Annex) (modifying the text of subdivision (a) of U.S. Note 16 to provide, in relevant part, that "[g]oods for which entry is claimed under a provision of chapter 98 and which are subject to the additional duties prescribed herein shall be eligible for and subject to the terms of such provision and applicable [CBP] regulations . . . ").  Thus, Plaintiff fails to state a plausible claim that the President's imposition of Section 232 duties on steel articles also qualifying for treatment under Chapter 98 is unlawful.

## II.    Claim against CBP Actions

Defendants request the court dismiss any claims that Plaintiff asserts against CBP.  Defendants argue that CBP's issuance of the CSMS guidance is not a final agency action subject to review, and that Plaintiff otherwise fails to state a claim that the guidance was unlawful.  <u>See</u> Defs.' Partial Mot. to Dismiss at 26–30.[13]  Plaintiff

---

[12] Subject to certain exceptions, merchandise that leaves the Customs territory of the United States remains subject to duty upon each subsequent re-importation.  <u>See</u> U.S. Note 2, Subchapter XXII, Chapter 98, HTSUS; 19 C.F.R. 141.2 (2018); <u>cf., also</u> <u>Maple Leaf Petroleum, Ltd. v. United States</u>, 25 C.C.P.A. 5, T.D. 48976 (1937).

[13] Defendants also move to dismiss Plaintiff's challenges to CBP's assessment of

(footnote continued)

acknowledges that it is not challenging a meaningful CBP decision.  See Pl.'s Br. at

10 ("At its heart, this is not a challenge to a meaningful decision made by a CBP

officer, but rather a challenge to the President's authority to issue a Presidential

proclamation without authority . . .").  To the extent that Plaintiff's complaint could

be construed as asserting a claim against CBP, particularly the CSMS message,[14]

that claim is dismissed for failure to state a claim upon which relief can be granted.

"The APA, by its terms, provides a right to judicial review of all 'final agency

action[s] for which there is no other adequate remedy in a court[.]'"  Bennett v. Spear,

---

Section 232 duties for lack of jurisdiction.  See Defs.' Partial Mot. to Dismiss at 20–
26.  To the extent that Plaintiff alleges that CBP's assessment of duties reflect a
meaningful decision, Defendants argue that jurisdiction does not arise under 28
U.S.C. § 1581(i) because Plaintiff would be required to protest that decision as
required by § 1581(a).  See id.; see also 28 U.S.C. § 1581(a) ("The Court of
International Trade shall have exclusive jurisdiction of any civil action commenced
to contest the denial of a protest, in whole or in part, under . . . [19 U.S.C. § 1515.]");
Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987).  However, Plaintiff
acknowledges that CBP made no meaningful decision.  See Pl.'s Br. at 10.  Since
CBP's actions are an implementation of the President's proclamations over which
CBP has no control, jurisdiction under 28 U.S.C. § 1581(a) is unavailable.  See U.S.
Shoe Corp. v. United States, 114 F.3d 1564, 1570 (Fed. Cir. 1997) (holding jurisdiction
does not arise under 28 U.S.C. § 1581(a) where Customs does not make a protestable
decision).

[14] Defendants' partial motion to dismiss addresses Count III of Plaintiff's complaint,
which appears to focus on CBP's conduct, including CBP's CSMS messages.  See Defs.'
Partial Mot. to Dismiss at 19–30; Compl. ¶ 92 ("CBP's assessment of Section 232
duties on articles qualifying for repair and alteration treatment under subheading
9802.00.50, HTSUS, is contrary to law."); id. ¶ 97 ("CBP's CSMS No. 42355735 of
April 13, 2020 is an unlawful action seeking 'to adjust imports' and attempts to
subject goods classifiable under subheading 9802.00.50, HTSUS, to Section 232
duties of 25 [percent] by applying such duties to the cost or value of repairs,
alterations, or processing performed abroad, but this modification is untimely[.]"); see
also id. ¶¶ 97–100.

520 U.S. 154, 175 (1997) ("Bennett") (citing 5 U.S.C. § 704). "'Agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency action is final when it: (1) "mark[s] the 'consummation' of the agency's decisionmaking process"; and (2) is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" Bennett, 520 U.S. at 177–78 (citations omitted).

The CSMS messages are not a "rule, order, license, sanction, [or] relief[,]" nor does Plaintiff claim them to be. In response to Defendants' jurisdictional argument, Plaintiff asserts that "[i]t is plain that CBP . . . lacks the power to hold the Presidential proclamations herein challenged to be unlawful, or to set it aside." Pl.'s Br. at 10. Thus, despite Plaintiff's articulation of its Count III claiming that "CBP's assessment of Section 232 duties on Plaintiff's re-imported steel products which are altered in Canada . . . are contrary to law and must be set aside[,]" Compl. ¶ 99, Plaintiff acknowledges that the true nature of its claim is "not a challenge to a meaningful decision made by a CBP officer, but rather a challenge to the President's authority to issue a Presidential proclamation." Pl.'s Br. at 10. CBP's CSMS messages do not mark the consummation of an agency decision-making process,[15] see

---

[15] CBP issued CSMS No. 18-000424, entitled "UPDATE: Additional Duty on Imports of Steel and Aluminum Articles Under Section 232." The message states, for example, that "[t]he aforementioned Presidential Proclamations include provisions for the treatment of steel and aluminum articles admitted to a U.S. foreign trade zone (FTZ).

(footnote continued)

Bennett, 520 U.S. at 177–78, and Plaintiff does not plausibly allege that CBP made

any other meaningful decisions with respect to the imposition of Section 232 duties

on steel imports.  Thus, any claim against CBP for such a decision is dismissed.

## III.   Publication of the Steel Report

Defendants argue that Plaintiff's challenge to the Government's failure to

publish the Steel Report is moot because the report has since been published.  See

Defs.' Partial Mot. to Dismiss at 3, 41; see also Compl. ¶¶ 31, 101–103 (citing, inter

alia, 19 U.S.C. § 1862(b)(3)(B)).  Plaintiff responds that its complaint plausibly alleges

that failure to publish the Steel Report "invalidates the President's actions[.]"  Pl.'s

Br. at 39–42.  Count IV of Plaintiff's complaint is dismissed.

Section 1862(b)(3)(B) states that the Secretary's report must be published;

contrary to Plaintiff's position, see Pl.'s Br. at 39–42, the provision does not state

when the report must be published or that publication is a pre-condition to the

President's authority to act.  See 19 U.S.C. § 1862(b)(3)(B) ("Any portion of the report

submitted by the Secretary under subparagraph (A) which does not contain classified

information or proprietary information shall be published in the Federal Register.");

cf. also, e.g., Cause of Action Inst. v. U.S. Dep't of Com., No. 1:19-CV-00778 (CJN),

2021 WL 148386, at *7–8 (D.D.C. Jan. 14, 2021) (concluding, in light of the fact that

---

The current provisions, as amended, are outlined in the following paragraphs."
CSMS No. 18-000424 at 2.  CBP's message is an update to the trade community
regarding various Presidential proclamations, and does not mark the consummation
of an agency decision-making process.

Congress did not establish a deadline for publication of the report generated by the
Secretary pursuant to a Section 232 investigation, that the President has a legitimate
confidentiality interest in delaying publication so as not to compromise efforts to
address the threat to the national security); Silfab Solar, Inc. v. United States, 892
F.3d 1340, 1346 (Fed Cir. 2018).   Here, the Steel Report has been published.   See
generally 85 Fed. Reg. 40,202.   Therefore, Count IV of Plaintiff's complaint is
dismissed.

## IV.   Constitutional Challenges

### A. Due Process

Defendants request the court dismiss Count V of Plaintiff's complaint, arguing
that Maple Leaf neither demonstrates that the Government failed to comply with
Due Process requirements nor identifies an independent source giving rise to a
property interest.   See Defs.' Partial Mot. to Dismiss at 43–44.   Plaintiff argues that
it has identified a protectable claim of entitlement to re-import of steel products from
Canada, and that the Government imposed Section 232 duties without affording due
process of law, thus violating the Due Process Clause of the U.S. Constitution.   See
Pl.'s Br. at 37–39; see also Compl. ¶¶ 1, 3, 8, 104–08.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of
life, liberty, or property, without due process of law[.]"   U.S. CONST. amend. V.   "The
fundamental requirement of due process is the opportunity to be heard 'at a
meaningful time and in a meaningful manner.'"   Mathews v. Eldridge, 424 U.S. 319,

333 (1976) ("Eldridge") (citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  Once

it has been established that "the plaintiff has been deprived of a protected interest in

'property' or 'liberty[,]'" the court evaluates whether sufficient process of law has been

afforded.  Int'l Custom Prods. v. United States, 791 F.3d 1329, 1337 (Fed. Cir. 2015)

(citation omitted); Eldridge, 424 U.S. at 333–49.

      Plaintiff fails to explain how the Government did not afford sufficient process

under the law.  Maple Leaf essentially argues that the Government's imposition of

Section 232 duties was unlawful.  See Pl.'s Br. at 5; Oral Arg. at 00:53:28–00:54:32,

Apr. 12, 2021, ECF No. 27 (clarifying that Plaintiff's Due Process argument amounts

to the same challenge it poses to the Government's alleged failure to comply with the

statute).  Regardless of whether Plaintiff has a protected interest, a claim that

challenges the lawfulness of the Government's actions does not on its own

demonstrate that Maple Leaf was deprived of a meaningful opportunity to be heard,

or that more process was due to protect its interests.  See Eldridge, 424 U.S. at 332–

33.  Count V is dismissed.

## B. Non-Delegation Doctrine

      In Count VI of the complaint, Plaintiff challenges Section 232 as

"unconstitutional delegation of authority from Congress to the Executive Branch

lacking an intelligible principle."  Compl. ¶ 110.  Previously, the Supreme Court in

Federal Energy Administration v. Algonquin SNG, Inc., 426 U.S. 548 (1976)

("Algonquin") held that Section 232 satisfies non-delegation requirements because

the enactment contains clear conditions that must be satisfied in order for the President to act.  See id. at 559–60.  Despite Algonquin's holding, some 40 years later, plaintiffs in American Institute for International Steel, Inc. v. United States, 806 F. App'x 982 (Fed. Cir. 2020) sought again to challenge Section 232 on non-delegation grounds.   Nonetheless, this Court and the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") held that Algonquin controlled, and the Supreme Court denied certiorari.  Am. Inst. for Int'l Steel, Inc. v. United States, 43 CIT __,  376 F. Supp. 3d 1335 (2019); aff'd, 806 F. App'x 982, cert. denied, 141 S. Ct. 133 (2020); Am. Inst. for Int'l Steel, Inc. v. United States, 141 S. Ct. 133, 207 L. Ed. 2d 1079 (2020).  Plaintiff's complaint, filed two days after the Supreme Court's denial of certiorari, nonetheless claimed Section 232 violated the non-delegation doctrine.  Compl. ¶¶ 109–10 (Count VI).  Defendants move to dismiss Count VI based upon the continuing vitality of Algonquin.  In response, Plaintiff tries to recast its argument regarding the non-delegation doctrine.  Plaintiff now argues that "any holding of this Court which would diminish the 'clear preconditions' set by Congress in Section 232(b) or (c) . . . would present significant separation of powers concerns that would be appropriately revisited by the Supreme Court based on the allegations in Count VI."  Pl.'s Br. at 45.  Plaintiff's recharacterization of its Count VI, which presupposes that an adverse ruling of this Court results in a construction of Section 232 that runs afoul of non-delegation requirements, is meritless.  As explained above, Proclamation 9705 timely imposed Section 232 duties on re-imported steel products from Canada.   The

Court No. 20-00125                                                                 Page 29

preconditions set forth in Section 232 have been met.  That Plaintiff disagrees does

not create a non-delegation doctrine claim.  Accordingly, Count VI of Maple Leaf's

complaint is dismissed.

## CONCLUSION

For the foregoing reasons, the court grants Defendants' partial motion to

dismiss Plaintiff's complaint.  Therefore, it is

**ORDERED** that Defendants' partial motion to dismiss is granted; and it is

further

**ORDERED** that all counts except Count II of Plaintiff's complaint are

dismissed.

                                                        /s/ Claire R. Kelly
                                                        Claire R. Kelly, Judge

                                                        /s/ Gary S. Katzmann
                                                        Gary S. Katzmann, Judge

                                                        /s/ Jane A. Restani
                                                        Jane A. Restani, Judge


Dated:         June 22, 2021
               New York, New York